IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JENNIFER WELLS-MARSHALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-00086-RAH |
| ) | [WO] |
| AUBURN UNIVERSITY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennifer Wells-Marshall was reprimanded and later terminated as Executive Director for the Family Child Care Partnership, a program within Auburn University's College of Human Sciences. Wells-Marshall now sues Auburn University and Dr. Angela Wiley, her former supervisor, for race discrimination, retaliation, and fostering a race-based hostile work environment. Before the Court is the Defendants'[1] Partial Motion to Dismiss, which seeks dismissal of the hostile work environment claim in the First Amended Complaint (Complaint) only. The motion is ripe for resolution. For the following reasons, the motion is due to be GRANTED.

---

[1] The Defendants will be collectively referred to as Auburn.

1

# I. BACKGROUND

Wells-Marshall is an African American female who has been employed with Auburn since 2005.  In June 2019, Wells-Marshall was promoted to Executive Director of the Family Child Care Partnership (FCCP), a program within Auburn's College of Human Sciences.  (Doc. 16 at 4.)  In her new position, Wells-Marshall was supervised by Dr. Angela Wiley, the former Executive Director.  (*Id*. at 4, 8.)  Wells-Marshall claims that she inherited a "sinking ship" caused in large part by the mismanagement of Dr. Wiley, who was never reprimanded or held accountable for the FCCP's problems and failures.  (*Id*. at 7, 8-9, 17.)

Wells-Marshall's tenure as the Executive Director was brief and full of conflict.  She claims that Dr. Wiley held black employees to different standards than white employees, undermined and did not support her, gave her an unjustified remand because of wrongful accusations by other employees of rude and demeaning conduct, and allowed her to be treated poorly by other staff.  For example, Wells-Marshall claims that a white subordinate verbally attacked her in front of other employees in June 2020 after she refused to reschedule a training session. (*Id*. at 4.)  Wells-Marshall sought to reprimand the employee, but this effort was rebuffed by Dr. Wiley. (*Id*. at 4-5.)  According to Wells-Marshall, this was because Auburn would not reprimand white employees, and would only reprimand black employees.  (*Id*. at 5.)

Then, after complaining about the double-standard toward black employees, Wells-Marshall was reprimanded in July 2020 for her conduct toward other employees, including allegedly curt emails, cutting someone off during a conversation, and being intimidating, aggressive, and threatening towards others—allegations that she disputed as conflicting with the actual facts and the opinions of other co-workers. (*Id.* at 5-6, 13.)

On another occasion, Wells-Marshall sought to remove a poorly performing managing director from a position, only to be undermined by Dr. Wiley, who reassigned the employee to another position and refused to properly document the employee's poor performance. (*Id.* at 9–10.) Dr. Wiley, according to Wells-Marshall, would not give poor performance reviews to white employees while she would give poor performance reviews to black employees. (*Id.* at 10–11.)

The FCCP managed Auburn's Early Head Start program. (*Id.* at 9.) Beginning with Dr. Wiley's tenure as FCCP Executive Director, the Auburn Early Head Start program was often noncompliant with Alabama Department of Human Resource's contractual obligations. (*Id.* at 12–14.) Wells-Marshall claims that she was wrongfully accused of not following directives and asking too many questions about the program, and she was given unreasonable timelines to correct issues that largely pre-dated her tenure as Executive Director. (*Id.* at 13-14.) After forwarding her concerns about the program to Head Start team members, Dr. Wiley counseled

her against upsetting the staff and told her not to discipline any staff members for failing to meet contractual obligations. (*Id.* at 14-15.) She also directed Wells-Marshall not to discuss the issues with the Department of Human Resources. (*Id.* at 15.)

As it concerned Wells-Marshall's treatment of her white employees, Dr. Wiley told her that she should take more time to get to know them, that they would respond better with honey not vinegar, and that she needed to respond to emails more quickly. (*Id.* at 15–16.) According to Wells-Marshall, Dr. Wiley allowed employees to send inappropriate emails to Wells-Marshall and to yell at Wells-Marshall, yet told her she should ignore the offending conduct. (*Id.* at 18.)

Wells-Marshall also says Dr. Wiley instructed her to correct Early Head Start's non-compliance issues but did not require white employees to do the same. (*Id.* at 16.) Dr. Wiley also gave white employees leniency and raving performance reviews. (*Id.* at 16, 18.)

Eventually, Dr. Wiley expressed her disappointment in hiring Wells-Marshall for the FCCP. (*Id.* at 17–18.) In October 2020, after Wells-Marshall had contacted the dean of the College of Human Sciences to address what Wells-Marshall deemed to be a hostile work environment, she was terminated from her executive director position, effective seven months later. (*Id.* at 18.) No reason was given for the termination other than that it was in the best interest of the college. (*Id.* at 18.)

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure tests the sufficiency of a complaint against the legal standard articulated by Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  A district court accepts a plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes them "in the light most favorable to the plaintiff," *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations." *Id*.  Instead, it must contain "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  Still, the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.  A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.  DISCUSSION

Count Two is a claim alleging a racially hostile work environment in violation of Title VII.  Auburn seeks dismissal of this claim, arguing that the factual allegations, even when assumed true, do not state a plausible claim to relief for race-based harassment.  The Court agrees.

"A hostile work environment claim under Title VII requires proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1152 (11th Cir. 2020) (internal quotation marks and citation omitted).  To plead a hostile work environment claim, a plaintiff must show:

> (1) that [she] belongs to a protected group; (2) that [she] has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee []; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002).  "Only conduct that is based on a protected category, such as race, may be considered in a hostile work environment analysis."  *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012).

Auburn argues for dismissal, claiming Wells-Marshall has not plausibly alleged sufficient facts to establish that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and that it was based on her race.

To the extent Auburn argues that the alleged harassment has no connection to race, Auburn is making a causation argument.  A defendant does not have to engage in facially or explicitly racist harassment (like using racial epithets) to be found liable for creating a hostile work environment.  To claim facially neutral conduct rises to the level of racial harassment, however, the surrounding context must clearly demonstrate that the conduct was intended as a racial insult. *Ambus v. AutoZoners, LLC,* 71 F. Supp. 3d 1280, 1300 (M.D. Ala. 2014) ("[A]lthough words not directly related to race *may sometimes* constitute racial harassment, there must be a surrounding context in which it is clear that a comment is 'intended as a racial insult.'" (emphasis added)) (citing *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012)).  Wells-Marshall's Complaint has not met this standard.

Wells-Marshall's Complaint is comprised solely of conclusory allegations that she faced racial harassment at Auburn.  For example, Wells-Marshall alleges that black employees faced a double standard for expectations and discipline, Dr. Wiley undermined her and did not support her, she was wrongfully accused of inappropriate conduct toward other employees that resulted in an unjustified

7

reprimand, she was poorly treated by fellow staff, and she was ultimately terminated as executive director in October 2020. But even in the light most favorable to Wells-Marshall, no substantive facts in her complaint create the inference that this treatment was based on race rather than other plausible reasons, including differences in management styles and personality conflicts. To simply make the leap that she was treated poorly in the workplace as compared to other employees because she was black and her supervisor and her complaining subordinates were white, or that black and white employees faced double standards, in a conclusory fashion and without providing specific examples of dissimilar treatment for similar conduct is insufficient.

But even assuming that Wells-Marshall was harassed based on her race, Wells-Marshall also has failed to plead sufficient facts plausibly showing that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment.

When evaluating the objective severity of an alleged hostile work environment, a court must consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Corbett v. Beseler,* 635 F. App'x 809, 816 (11th Cir. 2015) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246

(11th Cir. 1999) (en banc)). "Title VII is not a general civility code; 'ordinary tribulations of the workplace, such as sporadic use of abusive language, [race-related] jokes, and occasional teasing' cannot form the basis of a claim for actionable harassment or hostile work environment." *Corbett*, 635 F. App'x at 816 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted)). "Title VII 'is not a shield against harsh treatment in the workplace'; '[p]ersonal animosity is not the equivalent of [race] discrimination.'" *Id.* (quoting *Succar v. Dade Cnty. Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000) (citation and internal quotation marks omitted)).

Wells-Marshall avers that, over the course of several months, she inherited a "sinking ship" of a department, she was verbally berated by a subordinate who she wanted to reprimand but who her supervisor did not, she was unjustly reprimanded, she faced double standards concerning her supervisor's treatment of white employees versus black employees, she was inappropriately accused of threatening other employees and being curt, aggressive, and intimidating, she was held to a different standard by her supervisor when compared to others, and she was wrongly terminated as executive director after complaining of a hostile work environment. Yet, she only cites to a few discrete incidents in her Complaint. These acts and the others asserted in the Complaint are certainly rude and unprofessional, if true.

Nevertheless, they do not rise to the level of severe or pervasive harassment or hostility that would alter the terms and conditions of employment.

The Eleventh Circuit has repeatedly found much more abhorrent conduct to be nonetheless insufficient to state a hostile work-environment claim. *See, e.g.*, *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1254 (11th Cir. 2014) (finding that a reasonable jury could not find a workplace objectively hostile where a black employee regularly saw the Confederate flag, regularly saw racist graffiti in the bathroom, heard people say the n-word a "few times over several years," and heard about a noose being placed in the workplace bathroom); *Singleton v. Auburn Univ. Montgomery*, 520 F. App'x 844, 848 (11th Cir. 2013) (finding that facing two racist comments or conduct in the workplace over the course of twenty years is insufficient for finding a hostile work environment); *Barrow v. Georgia Pac. Corp.,* 144 F. App'x 54, 57 (11th Cir. 2005) (finding conduct insufficiently severe where a superintendent would regularly call a black employee "boy," called him a "n****r" three times in one year, told the employee three times that he was going to kick the employee's "black ass," and when the employee reported this conduct to his supervisor, the supervisor responded, "you is a n****r").

Additionally, when courts have dealt with similar workplace unpleasantness as here, they have found that the conduct was insufficiently severe or pervasive to support a hostile work environment claim. *See, e.g., Malone v. U.S. Att'y Gen.,* 858

F. App'x 296, 301–02 (11th Cir. 2021) (finding conduct insufficiently severe where a plaintiff alleged that his boss "assigned him additional work, subjected him to discipline after he failed to file a required form after an inmate's death, and verbally abused him by 'nitpicking every task' he completed and 'harassing' him for filing an evaluation late."); *Elite Amenities, Inc. v. Julington Creek Plantation Cmty. Dev. Dist.,* 784 F. App'x 750, 753 (11th Cir. 2019) (holding that "a board member's uninvited, unpleasant office visits; physical engagement with the employee's work papers; and harsh emails are nothing more than ordinary tribulations of the workplace."); *Hutchinson v. Auburn Univ.*, No. 3:18-CV-389-ALB, 2020 WL 1905968, at *1–4 (M.D. Ala. Apr. 17, 2020) (dismissing claim where the complaint alleged that a black employee's supervisor was more comfortable with white employees and treated plaintiff rudely compared to his treatment of white employees, told plaintiff he did not trust her, gave her disciplinary write-ups, removed some of her duties, scrutinized her time sheets, and protected white employees); *Thomas v. Auburn University*, No. 3:21-cv-192-RAH-SMD, 2022 WL 428160 (M.D. Ala. Feb. 11, 2022)(dismissing hostile work environment claim).

In short, Wells-Marshall's allegations do not plausibly support a claim that Auburn's actions constituted sufficiently severe or pervasive harassment based on race and therefore Wells-Marshall's hostile work environment claim (Count Two) is due to be dismissed.

11

## IV. CONCLUSION

Accordingly, it is hereby ORDERED as follows:

(1)   The Defendants' Partial Motion to Dismiss (Doc. 21) is GRANTED;

(2)   Count Two for a hostile work environment is DISMISSED;

(3)   Counts One and Three shall proceed.

DONE, on this the 3rd day of November, 2022.

                                         /s/ R. Austin Huffaker, Jr.
                                R. AUSTIN HUFFAKER, JR.
                                UNITED STATES DISTRICT JUDGE